**STATE of Tennessee, Petitioner,**

v.

**Wallace Lewis McLENNAN, Respondent.**

Supreme Court of Tennessee.

May 7, 1973.

David M. Pack, Atty. Gen. of Tenn., Robert H. Roberts, Asst. Atty. Gen., Nashville, John L. Williams, Dist. Atty. Gen., Huntingdon, for petitioner.

W. Lee Lackey, Savannah, for respondent.

OPINION

CHATTIN, Justice.

Respondent was convicted of carrying burglarious instruments in violation of T. C.A. Section 39–908 and sentenced to imprisonment for not less than one nor more than ten years.

The Court of Criminal Appeals reversed and remanded the case for a new trial by a two-to-one decision. We granted the State's petition for certiorari.

The only question involved is whether the Court of Criminal Appeals committed error in finding the trial judge should have sustained respondent's motion to suppress the evidence obtained by the two officers who arrested respondent.

At approximately three thirty A.M., on October 17, 1970, two police officers of Savannah, Tennessee: Cannon and Alexander, were making a routine patrol of the business district of the town where a number of business houses and vending machines on the outside had been broken into during recent months.

They saw a car with two men in it come out into the street from a service station which had been closed for several hours.

At the hearing on the motion of respondent to suppress the evidence, Cannon testified he had seen the car parked in a different part of the town a few hours prior with two persons in it.

Both officers testified the car was a strange one and had Tennessee National Guard license plates which did not designate a county of the State.

They followed the car a short distance. The car was not being operated in violation of law nor had the officers any evidence of any crime having been committed or about to be committed in the town that night. Nevertheless, the officers stopped the car. Cannon went to the driver's side while Alexander went to the opposite side. Respondent was the driver. Jackie Welch was the other occupant of the car.

The officers stated they had been stopping cars which came from a closed business building for identification purposes. They, also, testified they were suspicious of this car because it came from a closed service station; and that they stopped it to ascertain the identity of the persons therein and where they resided.

They testified Cannon asked respondent for his driver's license. When he got out of the car to hand his driver's license to Cannon, a light came on in the car.

They stated when the light came on in the car they could see a bag with a sledge hammer handle and crowbars protruding from it in the rear floorboard and two walkie-talkie radios on the back seat; and that they arrested respondent and Welch for possession of burglarious instruments.

The bag contained four crowbars, a sledge hammer, a hatchet and a chisel.

Welch was jointly indicted with respondent but was not put to trial with respondent. Welch testified at the trial. Respondent did not testify in his own behalf.

The majority opinion of the Court of Criminal Appeals, in reversing the trial judge, said a mere general suspicion is not probable cause for a warrantless arrest.

That opinion, also, stated the officers arrested respondent by stopping the car. In making this statement, the majority relied on Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633 (1947).

We are of the opinion Robertson v. State, supra, is not in point. In that case, two highway patrolmen stopped a car they were following on a public highway in daylight. The court said, under the facts of that case, the officers had no substantial reason to be suspicious; and that the stopping of the car was a subterfuge.

■ We think under the facts of this case, the officers had a right to stop the car to ascertain the identity of the occupants and where they resided. One of the officers first saw the car parked in a different section of the town with two men in it a few hours prior to stopping it. It was a strange car with license plates which did not designate a county of the State. It was seen by the officers coming out of a closed service station at an unorthodox hour of the day in a business section where a number of burglaries had occurred in recent months.

"Granting that the constitutional prohibition against unreasonable searches and seizures makes no distinction between informal detention without cause and formal arrest without cause, there is a difference between that 'cause' which will justify informal detention short of arrest and the probable cause standard required to justify that kind of custody traditionally denominated an arrest. Our concern here is what degree of cause will justify cursory, informal detention in circumstances which would not justify an arrest, and whether the officers met that standard in the particular circumstances of this case.

"We take it as settled that there is nothing ipso facto unconstitutional in the

brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Busby v. United States, 296 F.2d 328 (9 Cir., 1961). A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement require that the validity of belief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable ground for their actions. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." Wilson v. Porter, 361 F.2d 412 (9 Cir. 1966).

"The local policeman, in addition to having the duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits to investigate whenever such circumstances indicate to him that he should do so." Frye v. United States, 315 F.2d 491 (9 Cir. 1963).

"While the Fourth Amendment may be construed as encompassing 'seizure' of an individual, it cannot be contended that every detention of an individual is such a 'seizure.' If that were the case, police investigation would be dealt a crippling blow, by imposing a radical sanction unnecessary for the protection of a free citizenry. Under such a theory, a policeman could not stop and question a person standing next to a bloody corpse." United States v. Bonanno (D. C.N.Y.) 180 F.Supp. 71 (1960).

"The process of inquiry may involve some restraint on the individual liberty of some people of whom police make in-

quiries without arrest. It would be absurd to suggest that police must arrest a person before they can ask him questions." Goldsmith v. United States, 107 U.S.App.D.C. 305, 277 F.2d 335 (1960).

"The essential needs of public safety permit police officers to use their faculties of observation and to act thereon within proper limits. It is not only the right but the duty of police officers to investigate suspicious behavior, both to prevent crime and apprehend offenders." State v. Fish, 280 Minn. 163, 159 N.W.2d 786 (1968).

This Court, in Sneed v. State, 221 Tenn. 6, 423 S.W.2d 857 (1968), stated:

"That constitutional rights are not violated when a law officer, without any trespass against the defendant, and while he is at a place he had a right to be, looks and sees evidence against a defendant which is plainly visible."

The officers saw the criminal evidence prior to the arrest. Such was not a search and seizure as contemplated by the constitution. Batchelor v. State, 213 Tenn. 649, 378 S.W.2d 751 (1964); Armour v. Totty, Tenn., 486 S.W.2d 537 (1972).

We are of the opinion the majority opinion of the Court of Criminal Appeals is erroneous in holding the stopping of the car and asking the driver to display his driver's license was an illegal arrest. It is clear from the record the officers did not stop the car for the sole purpose of checking the license, if any, of the operator. On the contrary, the car was stopped for the purpose of ascertaining the identity of the occupants and where they resided.

The arrest occurred after the criminal evidence was in plain view.

"An arrest, as the term is used in criminal law, signifies the apprehension or detention of the person of another in order that he may be forthcoming to answer an alleged or supposed crime." High v. State, 188 Tenn. 166, 217 S.W. 2d 774 (1949).

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is affirmed.

DYER, C. J., HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.