STATE of Tennessee, Appellant,

v.

Kenneth Carl SCARLETT, Appellee.

Court of Criminal Appeals of Tennessee, at Nashville.

Aug. 12, 1993.

Charles W. Burson, Atty. Gen. and Reporter, Kathy M. Principe, Asst. Atty. Gen., Nashville, William E. Gibson, Dist. Atty. Gen., Lillie Ann Sells, Asst. Dist. Atty. Gen., Cookeville, for appellant.

William A. Cameron, Randy Chaffin, Cameron & Cameron, Cookeville, for appellee.

## OPINION

SUMMERS, Judge.

This record presents an appeal as of right by the State of Tennessee from an order entered by the Judge of the Putnam County Criminal Court granting the appellee's motion to suppress evidence. Appellee was indicted in August 1991 for driving under the influence of an intoxicant. The sole issue before this Court is whether the trial judge committed prejudicial error in finding that the police officer lacked reasonable suspicion for the initial stop.

## FACTS GLEANED AT THE SUPPRESSION HEARING

Around midnight on March 17, 1991, Officer Troy Human was on routine patrol on Jackson Street in Putnam County. Looking towards Polly Street behind the Park View School he observed a truck[1] driven by Kenneth Scarlett, appellee, stopped in the middle of the road. Officer Human could not recall whether the headlights were on, but he remembered seeing the vehicle's brake lights. The truck was stopped behind a small church next to the school. Human was suspicious because the vehicle was stopped in the middle of the street at that time of night. He was aware that several complaints had been made about prowlers and vandalism at the school. He decided to check out the vehicle.

Officer Human drove down Jackson Street, turned around, came back, and saw the vehicle still parked in the middle of Polly Street. Appellee's truck was in the same position as before, approximately 50 feet from the back door of the schoolhouse.

As the officer drove up behind the suspicious vehicle, its brake lights went off, and it proceeded around the front of the school. The officer followed in an attempt to obtain the vehicle's tag number. Appellee drove around the school, making several quick, hard-angled turns. Officer Human testified that appellee was not speeding nor was he driving in a reckless manner. However, because of the nature of the turns, the officer believed appellee was in the process of evading him. Officer Human pulled the vehicle over with the intent to investigate and get the tag number.

The policeman had been on the police force for two years, having received proper training. It was the policy of the police department during the night to check businesses to deter criminal activity. In the months preceding Scarlett's arrest, the department had received several calls to the Park View School. There were reports of burglaries, prowlers, and arson at the school, all of which occurred during the evening hours. There had also been problems at that location involving juveniles and drugs. Approximately one week before the appellee's arrest, police received reports of larceny at the school.

## DID THE OFFICER HAVE REASONABLE SUSPICION TO STOP THE APPELLEE?

Based upon the facts adduced at the suppression hearing, the trial court ordered the suppression of all of the state's evidence obtained as a result of the stop of the appellee's vehicle. Scarlett successfully argued that the evidence should be suppressed because the officer did not have reasonable suspicion for stopping his truck. The trial court agreed; however, the court did not enter extensive findings of fact. The court did conclude that because innocent reasons exist for someone to stop in the middle of the road,

1. The record refers to the vehicle as both a truck and a car. We will call it a truck or vehicle.

the officer did not have a sufficient basis for making the stop.

■ A policeman may make an investigatory stop when the officer has a reasonable suspicion, supported by articulable and specific facts, that a criminal offense has been, or is about to be, committed. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Griffin v. State,* 604 S.W.2d 40 (Tenn. 1980); *State v. Goad,* 692 S.W.2d 32 (Tenn. Crim.App.1985). An investigatory stop encompasses the stopping of a motor vehicle.

■ For a court to determine whether a policeman's reasonable suspicion is supported by articulable and specific facts, the court must consider the totality of the circumstances, that is, the entire picture. *State v. Moore,* 775 S.W.2d 372, 377 (Tenn.Crim.App. 1989); *State v. Hullum,* 664 S.W.2d 314, 317 (Tenn.Crim.App.1983). As this Court stated in *Moore:*

> This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders.
>
> \* \* \* \* \* \*
>
> A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him.

*Moore,* 775 S.W.2d at 377. Other factors may determine the existence of reasonable suspicion in a vehicular stop. These include the characteristics of the area, the behavior of the driver, and the aspects of the vehicle itself. *Hughes v. State,* 588 S.W.2d 296, 305–06 (Tenn.1979).

■ In *State v. McLennan,* 503 S.W.2d 909 (Tenn.1973), our Supreme Court upheld a stop where police officers witnessed a car pull out of a service station that had been closed for several hours. The officers testified the car was a "strange one" and had Tennessee National Guard license plates which did not designate a county. The Court relied heavily on the fact that a number of burglaries had recently been reported in the area. *McLennan,* 503 S.W.2d at 909–10. *See also, United States v. Watson,* 953 F.2d 895 (5th Cir.1992) (in the early morning hours, defendant pulled his car into the lot of an abandoned gas station, turned off his car's headlights, and came to a stop). *McLennan* is similar to the present case in that officers based reasonable suspicion on finding a vehicle parked or seen near a closed business during the night where numerous crimes had occurred in the recent past.

It appears that the trial judge believed the stop was not justified because many valid reasons exist for a vehicle to be stopped in the middle of the road. We respectfully disagree with this analysis. An officer is not required to have proof of an unequivocal nature that criminal conduct is about to, or has, occurred. We feel that the question is not whether the activity may be consistent with innocent activity; rather, we view the test as whether there are facts that make the conduct reasonably suspicious of past or future criminal conduct.

## HOLDING

Our holding is that the evidence preponderates against the finding of the trial court. Based upon the totality of the circumstances, we believe that the state has satisfied its burden of establishing reasonable suspicion, supported by articulable and specific facts, that the appellee had been, or was about to be, involved in some type of criminal behavior. The state in its brief concedes that there was not sufficient evidence to establish probable cause for arrest. We agree, but that is not the issue. The question is whether the officer, given all of the facts that he testified about at the suppression hearing, had the right to briefly stop the appellee in order to ascertain if criminal activity was afoot. The officer acted reasonably. He was doing his job. The intrusion to the appellee, prior to his arrest for driving under the influence, was minimal. The conduct of the officer comports with our constitutional mandates, both federal and state.

The judgment of the trial court suppressing the evidence seized from the appellee's automobile or person is reversed. This cause is remanded to the trial court for further proceedings consistent with this opinion.

ALLEN R. CORNELIUS, Jr., Special Judge, concurs in separate opinion.

JONES, J., not participating.

ALLEN R. CORNELIUS, Jr., Special Judge, concurring.

The trial court conducted a thorough hearing upon the defendant's motion to suppress the State's evidence against him. At the conclusion the trial court's ruling comments were: "There are just a whole lot of reasons people could stop.... There are just all kinds of reasons that are non-sufficient. I just have a hard time on this, and I'm going to grant the motion."

The Fourth Amendment issue in this case is much more complicated than revealed at first glance. It is understandable that the trial court had a "hard time."

The case of *State v. McLennan,* 503 S.W.2d 909 is a strong case in point with the one presently being considered. Justice Chattin writing for our Supreme Court cites, with approval, the following statement from *Frye v. United States,* 315 F.2d 491 (9 Cir. 1963):

> The local policeman, in addition to having the duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits to investigate whenever such circumstances indicate to him that he should do so.

The present case and *State v. McLennan, supra.,* are factually very similar; substitute burglary tools for DUI, a closed store for a closed school and midnight for 3:30 a.m. and there is basically no difference. In *McLennan,* however, the evidence was allowed and the defendant was convicted. He appealed and the Court of Criminal Appeals reversed and remanded for a new trial. The Supreme Court reversed this court and affirmed the judgment of the trial court.

In the present case little if any special significance has been given the fact that Officer Human was on routine patrol at midnight, acting as the guardian of the public peace, and with the duty to be alert for suspicious circumstances. The circumstances were sufficiently suspicious to warrant investigation and the right to privacy yields in such instances.

With this concurring opinion, I join with the lead opinion in finding that the evidence preponderates against the trial court's judgment sustaining defendant's motion to suppress.