## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

### OCTOBER 1997 SESSION



**FILED**

**January 26, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **C.C.A. NO. 02C01-9705-CC-00167** |
| Appellant, | ) | |
| | ) | **MADISON COUNTY** |
| VS. | ) | |
| | ) | **HON. WHIT LAFON,** |
| **DEWAYNE MOORE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Interlocutory appeal: motion to suppress) |

FOR THE APPELLANT:          FOR THE APPELLEE:


**JOHN KNOX WALKUP**
Attorney General & Reporter

**KENNETH W. RUCKER**
Asst. Attorney General
Cordell Hull Bldg., 2nd Fl.
425 5th Ave. N.
Nashville, TN 37243-0493

**JERRY WOODALL**
District Attorney General

**AL EARLS**
**SHAUN A. BROWN**
Asst. District Attorneys General
Lowell Thomas State Office Bldg.
Jackson, TN 38301

**JAMES D. GASS**
P.O. Box 7624
Jackson, TN 38308


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

# **OPINION**

The defendant was indicted for two weapons violations, possession of drug paraphernalia, and driving without a license. He filed a motion to suppress as evidence "all drugs and drug paraphernalia, and firearms, which were taken from the vehicle [he] was driving at the time of his arrest." After a hearing, the court below granted the defendant's motion. The State filed this interlocutory appeal, contesting the trial court's ruling. We affirm.

Belinda Coleman, a patrol officer with the Jackson Police Department, testified that, at approximately 11:00 p.m. on May 31, 1996, she had been in a residential neighborhood taking a missing person report. While she was taking the report, she saw the vehicle which the defendant was driving "traveling very, very slowly, five to ten miles an hour through the neighborhood. . . . Approximately five to ten minutes later the vehicle circle[d] again." At this time, she testified, one of the people who lived in the neighborhood had "advised [her] that the vehicle had been circling the neighborhood for quite some time." When she finished taking her report, she followed the vehicle in her police car. She testified that it had had four people in it, and that as she had followed it, "It made evasive actions and kept turning down different roads, taking side streets, back roads, in an attempt to shake me."[1] She further testified that she had been given a description the

---

[1] Officer Coleman's description of the defendant's intention in making these turns is unsupported by any independent proof. In other words, her description of the defendant's driving as "evasive" and done "in an attempt to shake me" was based, as far as we can tell from the record, solely on the fact that the defendant had made several turns. She did not testify that he had sped up or made the turns with any particular alacrity. The mere making of multiple turns in a neighborhood is not indicative of criminal activity, even while being followed by a police car. Cf. State v. Scarlett, 880 S.W.2d 707, 708 (Tenn. Crim. App. 1993) (where this Court, in reversing the trial court's grant of the defendant's motion to suppress, relied in part on proof that, when the police officer followed the defendant's car, he made "several quick, hard-angled turns.")

night before "of a small red vehicle which was occupied by four black males that had been involved in several auto burglaries[2] the night before."

After following it for some unspecified distance, Officer Coleman stopped the vehicle. She initially testified that the defendant had not been the driver. However, after reviewing her report, she acknowledged on cross-examination that the defendant had been the driver. She also testified on cross-examination that, "The burglaries had occurred over in the Daughtery Street area." Shortly after this testimony, the trial court interrupted the defendant's cross-examination and asked the State if it had any further proof. The State responded that its only remaining testimony would come from the police officer who had found the weapons after the stop. At that point, the court below held "the search was bad." No findings of fact were set forth on the record.

We first note that "stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth Amendments to the United States Constitution], even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). In some circumstances, a police officer may briefly detain a suspect without probable cause in order to investigate possible criminal activity. Brown v. Texas, 443 U.S. 47, 51 (1979). In these situations, an investigatory stop is permissible only when a police officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1 (1968). In order to determine specific

---

[2]Officer Coleman's testimony refers to both automobile burglaries and stolen vehicles; it appears that she may have been using the terms interchangeably.

and articulable facts, this Court must consider the "totality of the circumstances." United States v. Cortez, 449 U.S. 411, 417 (1981). Among the relevant elements to be considered are objective observations, information obtained from other police officers, and the pattern of operation of certain offenders. Id. at 418. This Court must also consider "the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) citing Terry v. Ohio.

In this case, the only specific and articulable facts that Officer Coleman had in her possession at the time she pulled the defendant over were that (1) she had seen the car drive by twice at a slow rate of speed; (2) the vehicle matched a description she had been given of a car seen in an area where several vehicles had been burglarized (or stolen) the night before; and (3) while she had followed it, the car made several turns. Additionally, she testified that she had been told by someone that the car had been "circling the neighborhood for quite some time." There was no proof as to the speed limit of the neighborhood or the proximity of the neighborhood to the area where the vehicles had been burglarized (or stolen).

Prior to pulling the defendant over, Officer Coleman was constitutionally required to have a reasonable suspicion, supported by specific and articulable facts, that a criminal offense had been or was about to be committed. The facts adduced by the State at the suppression hearing simply do not form the basis for such a suspicion. Prior to stopping him, Officer Coleman had not observed the defendant violate any traffic law, cf. Whren v. U.S., __ U.S. __, __ , 116 S.Ct. 1769, 1772 (1996) ("As a general matter, the

4

decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); she had not received reliable information that the defendant had just committed a crime, or that he was about to commit one, cf. State v. Banner, 685 S.W.2d 298 (Tenn. Crim. App. 1984); nor was she aware of an outstanding capias for the defendant's arrest, cf. State v. Watkins, 827 S.W.2d 293 (Tenn. 1992). In short, Officer Coleman stopped the defendant's car without a sufficient basis to do so and thereby violated his constitutional rights. Accordingly, the evidence obtained as a result of the unconstitutional stop was properly suppressed.

The judgment below is affirmed.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
PAUL G. SUMMERS, Judge


_____
DAVID G. HAYES, Judge