# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1998



**FILED**

**August 7, 1998**

**Cecil W. Crowson**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9707-CC-00272** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **ROBERTSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ROBERT W. WEDEMEYER** |
| **CARL SEAWARD ALLEN,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Direct Appeal - Possession with** |
| | ) | **Intent to Deliver a Controlled** |
| | ) | **Substance)** |

**FOR THE APPELLEE:**

WILLIAM R. GOODMAN, III
Goodman & Walker
124 South Court Square
Springfield, TN 37172

**FOR THE APPELLANT:**

JOHN KNOX WALKUP
Attorney General and Reporter

LISA A. NAYLOR
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

JOHN CARNEY
District Attorney General

DENT MORRIS
Assistant District Attorney
Main Street
Springfield, TN 37172

OPINION FILED _____

REVERSED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

Appellee Carl Seaward Allen was indicted by the Robertson County Grand Jury on September 8, 1997, for possession with intent to deliver a controlled substance, to wit: over ten pounds of marijuana. On March 7, 1997, Appellee filed a motion to suppress evidence seized during a search of his vehicle. The trial court held a hearing on this motion on April 7, 1997. On April 10, 1997, the court granted Appellee's motion to suppress. The State presents the following issue for our consideration on this appeal: whether the trial court erred in granting Appellee's motion to suppress evidence seized during the search of his vehicle.

After a review of the record, we reverse the judgment of the trial court and remand this case for trial.

## I. FACTUAL BACKGROUND

Officer Mark Norrod of the Tennessee Highway Patrol testified that on the evening of May 9, 1996, he patrolled Interstate 65 in Robertson County. Shortly before midnight, Officer Norrod noticed a vehicle which appeared to have no license plate. As he pursued the automobile, Officer Norrod observed Appellee's white van change from the right to the left lane for no apparent reason. The van was traveling northbound on Interstate 65. Officer Norrod activated his video camera and recorded the white Dodge van move back over into the right lane. Appellee then twice crossed over the white fog line on the righthand side of the road. Officer Norrod turned on his blue lights, and Appellee stopped his van at approximately 11:51 P.M.

At the suppression hearing, Officer Norrod testified that he thought that Appellee was either drowsy or under the influence of an intoxicant. Officer Norrod asked Appellee to produce his driver's license and his vehicle registration. When asked whether he had been drinking, Appellee replied that he had not. Appellee also informed the officer that he had no guns inside the van. Officer Norrod continued speaking with Appellee to ascertain whether or not he was under the influence of an intoxicant. Norrod stated that although he could detect no odor of alcohol on Appellee's breath, Appellee appeared tired and had red eyes. Appellee told Officer Norrod that he was from Dallas, Texas and that he was traveling to Maryland to visit his sick father.

However, Officer Norrod noted that Appellee's driver's license reflected that he was from McAllen, Texas, a border town renowned for drug smuggling.

Moreover, Officer Norrod observed that Appellee wore his work uniform while making his cross-country trip. The dispatch verified Appellee's driver's license and registration. After talking with Appellee for a few minutes, Officer Norrod testified that when he returned Appellee's driver's license and registration, he concluded that Appellee was, in fact, not intoxicated.

Officer Norrod then asked Appellee whether he would mind if the officer searched his van. Officer Norrod testified that he believed Appellee responded, "No, I don't mind; go ahead." Appellee asked Norrod whether he should turn off the ignition, and Norrod responded affirmatively. Officer Norrod also suggested that Appellee turn off his lights to avoid discharging the battery. The officer directed Appellee to step to the front of the van while he conducted the search. Officer Norrod stated that he began conducting the search at approximately 11:53 P.M. Norrod further testified that four and one-half minutes after stopping the van, he discovered about three pounds of marijuana in a duffle bag inside the

van. Norrod testified that he was able to smell the marijuana after unzipping the duffle bag. After discovering the marijuana in the duffle bag, Officer Norrod arrested Appellee and administered the <u>Miranda</u> warnings to him. Other officers and a drug dog arrived to assist with the search. Officer Norrod asked Appellee whether any more contraband was concealed in the vehicle, and Appellee informed him marijuana was stored in the door panels. Upon removing the door panels, the officers discovered 48.2 pounds of marijuana.

## II. CONSTITUTIONALITY OF THE STOP, SEARCH, AND SEIZURE OF APPELLEE'S VEHICLE

Appellee asserts that the stop and search of his vehicle contravened the United States and Tennessee Constitutions.

### A. CONSTITUTIONALITY OF THE INVESTIGATIVE STOP

Appellee argues that he had violated no statute or ordinance; thus, his conduct did not give rise to a reasonable suspicion, based upon specific and articulable facts, that a crime either had been or was about to be committed. Therefore, Appellee reasons, the stop of his van was unlawful. We disagree.

The Fourth Amendment guarantees that people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." The Fourth Amendment further requires that all warrants must issue based upon probable cause. U.S. Const. amend 4. Moreover, Article I, § 7 of the Tennessee Constitution similarly provides:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not

> named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Tenn. Const. art. I, § 7.

"Stopping an automobile and detaining its occupants constitutes a `seizure' within the meaning of the federal and state constitutions." State v. Lawson, 929 S.W.2d 406, 407 (Tenn. Crim. App. 1996). As a general rule, an officer is entitled to stop an automobile for investigative purposes where the officer has reasonable suspicion, based on specific and articulable facts, that an offense is being or is about to be committed. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); State v. Seaton, 914 S.W.2d 129, 131 (Tenn. Crim. App. 1995). To determine whether an officer's reasonable suspicion was supported by specific and articulable facts, this Court must consider the totality of the circumstances. Lawson, 929 S.W.2d 406, 408. The circumstances include, but are not limited to:

> objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders.
>
> *       *       *       *       *       *
>
> A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him.

State v. Scarlett, 880 S.W.2d 707, 709 (Tenn. Crim. App. 1993) (quoting State v. Moore, 775 S.W.2d 372, 377 (Tenn. Crim. App. 1989)).

Additional factors which may determine the existence of reasonable suspicion include "the characteristics of the area, the behavior of the driver, and the aspects of the vehicle itself." Id. (citing Hughes v. State, 588 S.W.2d 296, 305-06 (Tenn. 1979)).

In the case sub judice, the significant factors are the objective observations of Officer Norrod, the driver's behavior, and the aspects of the vehicle. Officer

Norrod testified at the suppression hearing that he was prompted to activate his video camera because Appellee changed lanes. This Court has viewed the video tape of Appellee's driving. The tape reveals that Appellee twice veered over to the extreme righthand side of the road across the white line. Officer Norrod explained that he feared that Appellee either was intoxicated or tired. Additionally, he noticed that Appellee's white Dodge van bore Texas license plates. Finally, it was almost 12:00 midnight when Officer Norrod noticed Appellee's vehicle. We conclude that, given the time of night, crossing the fog line three times, and the distance from which the vehicle had come, Officer Norrod had cause to stop Appellee's vehicle, if for no other reason than the public's safety.

Officer Norrod testified that after stopping the van, he was suspicious of Appellee for the following reasons: First, Appellee appeared drowsy. His eyes were red. Second, though not on duty at the time, Appellee was traveling cross-country in his work uniform. Third, Appellee told Officer Norrod that he was from Dallas, Texas; however, his driver's license stated that he was from McAllen, Texas, a border town well-known in law enforcement circles for drug smuggling.

The trial court correctly concluded that the initial investigatory stop of Appellee's van was justified.

## B. UNLAWFUL AND UNREASONABLE DETENTION

Appellee next complains that his detention was unlawful and unreasonable. We disagree.

In United States v. Sharpe, the United States Supreme Court held that "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). See also State v. Simpson, 1998 WL 70389 (Tenn. 1998) (holding that it was neither unreasonable nor unlawful to detain the defendant for approximately five minutes after the stop was initiated). Applying the Sharpe standard to the facts of the present case, it seems obvious that the detention was neither unreasonable nor unlawful. Within less than five minutes after stopping Appellee's van, Officer Norrod determined that Appellee was not intoxicated. After that, Appellee apparently could have gone on his way had he not consented to a search of his vehicle.

## C. CONSENT EXCEPTION TO WARRANT
## REQUIREMENT

Appellant's final contention is that the search of his van was unconstitutional because his consent was not voluntary. Appellee further claims that his consent was rendered invalid because Officer Norrod failed to advise him that he was free to go and continued conversing with him after returning his driver's license and vehicle registration. We disagree.

This Court is obliged to uphold the trial court's findings of fact in a suppression hearing unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). "The existence of consent and whether it was voluntarily given

are questions of fact." State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). In the present case, the trial court neglected to make any factual findings concerning the voluntariness or validity of Appellee's consent. The court concluded only that Appellee's detention became unlawful after the officer ascertained that Appellee was neither intoxicated nor in violation of any laws. Therefore, due to the lack of factual findings concerning this issue, we must employ a *de novo* standard of review. State v. Dougherty, 930 S.W.2d 85, 86 (Tenn. Crim. App. 1996).

We first address Appellee's contention that his consent was involuntarily given because Officer Norrod neglected to inform him that he was free to go after returning Appellee's vehicle registration and driver's license to him. The United States Supreme Court has held that the Fourth Amendment does not require that a lawfully seized detainee be advised that he is "free to go" before his consent to search will be recognized as voluntary. Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 419, 136 L.Ed.2d 347 (1996).

Voluntary consent to search is an exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973); State v. Bartram, 925 S.W.2d 227, 229 (Tenn. 1996). The prosecution bears the burden of demonstrating that consent to search was given voluntarily and freely. McMahan, 650 S.W.2d 383, 386. In order to be voluntary, the consent must be unequivocal, specific, intelligently given, and uncontaminated by any duress or coercion. State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992) (citing Liming v. State, 417 S.W.2d 769, 770 (Tenn. 1967)).

Less than five minutes after stopping Appellee's van, Officer Norrod requested permission to search the vehicle. Appellee consented, telling the officer to "Go ahead." After Officer Norrod located the marijuana in the duffle bag

and administered the <u>Miranda</u> warnings to Appellee, he inquired whether Appellee had any more marijuana stored inside the van. Appellee volunteered that more was inside the van doors.

In light of the foregoing, we conclude that Appellee freely and knowingly consented to a search of his van without any duress or coercion.

Because we conclude that the trial court erroneously granted Appellee's motion to suppress, we reverse the judgment of the trial court and remand this case for trial.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
DAVID G. HAYES, JUDGE