# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 24, 2011 at Knoxville

## STATE OF TENNESSEE v. LAMAR TYRONE HARRIS

### Appeal from the Criminal Court for Davidson County
### No. 2010-A-502    Steve R. Dozier, Judge

_____

### No. M2010-1912-CCA-R3-CD - Filed August 2, 2011

_____

The Defendant, Lamar Tyrone Harris, was charged with tampering with evidence, a Class C felony. Following the denial of his motion to suppress his inculpatory statement following a traffic stop, the Defendant pled guilty as charged. In accordance with the plea agreement, the trial court sentenced the Defendant as a Range I, standard offender to three years, suspended to probation. Pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure, the Defendant sought to reserve a certified question of law challenging the trial court's denial of his motion to suppress. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Dawn Deaner, District Public Defender, and Emma Rae Tennent, Assistant Public Defender (on appeal), and Latasha Thomas, Nashville, Tennessee (at trial), for the appellant, Lamar Tyrone Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Jennifer Erin McMillen and Rachel Sobrero, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

At the suppression hearing, Officer Atif Williams of the Metropolitan Nashville Police Department testified that he was conducting surveillance in the general area of Indiana Avenue on August 13, 2009. He said that he was familiar with the area because he had

received "continuous complaints about that area" and had conducted "several knock and talks, a couple of search warrants, [and] buy takedowns." He said that he had also conducted "hand-to-hand transactions with people in the area."

Officer Williams said that while he was conducting surveillance, he observed a car that was parked close to the corner of "40th and Clifton," near Indiana Avenue and near a "kind of like a triplex or quadplex." He noticed that two women were in the front seat of the car, while the Defendant and an unidentified man were in the back seat. He said that at some point, he saw the unidentified man get out of the back of the passenger side of the car and approach another man that was standing in a driveway. He said that once the unidentified man approached the man in the driveway, the two men had a short conversation and then "short hand movements started occurring between the two gentlemen." After he observed the "short hand movements," the unidentified man returned to the car.

Officer Williams testified that based upon his experience, he believed that he had witnessed the men "exchanging money for narcotics." Once the car drove away, Officer Williams followed the car for a "little while" before he turned on his lights to stop the car. Once he attempted to stop the car, he saw the Defendant and the other man "making hand movements" until the driver stopped the car. Once the car was stopped, Officer Williams saw the Defendant put his hand to his mouth. In the course of the investigation of the stopped car, Officer Williams questioned the Defendant, who eventually admitted that he had swallowed something.

On cross-examination, Officer Williams said that he was 25 or 30 feet away from the interaction. He admitted that he did not see what was exchanged between the two men and that he did not see any drugs or money at any point while he was observing the interaction. He also admitted that he did not see the men do anything that was illegal. He said that he stopped the car based upon his observation of the interaction between the two men and that he followed the car for "[m]aybe five minutes" before he stopped them.

In denying the Defendant's motion to suppress, the trial court found that "common sense" would allow Officer Williams to infer that something was exchanged between the two men when the officer observed the men touching hands. The trial court additionally found that Officer Williams had reasonable suspicion to believe that a drug transaction had just occurred between the two men because of where the transaction took place and because of the officer's prior experiences with that area. In so finding, the trial court held that Officer Williams had reasonable suspicion to stop the car based upon the observation of the interaction between the two men and that the Defendant's subsequent admission provided Officer Williams with probable cause to arrest the Defendant.

Following the trial court's denial of the motion to suppress the Defendant's statement that he had swallowed something, the Defendant pled guilty but reserved the following question for our review:

> Whether the police had reasonable suspicion to stop the vehicle in which the [D]efendant was a passenger, and whether any evidence obtained pursuant to this stop violates the [D]efendant's protections against unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and [a]rticle I, section 7 of the Tennessee Constitution.

## ANALYSIS

### I. Certified question

Tennessee Rule of Criminal Procedure 37 permits a criminal defendant to plead guilty and appeal a certified question of law when the defendant has entered into a plea agreement under Rule 11(a)(3) of the Rules of Criminal Procedure and has "explicitly reserved - with the consent of the [S]tate and of the court - the right to appeal a certified question of law that is dispositive of the case." Tenn. R. Crim. P. 37(b)(2)(A). As a prerequisite to this court's review, the final order or judgment appealed from must contain a statement of the certified question that clearly identifies the scope and legal limits of the question, including the agreement by the defendant, the trial court, and the State that the question is dispositive of the case and is explicitly reserved for appellate review as part of the plea agreement. State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). Our supreme court has repeatedly made clear that the Preston requirements "for appealing a certified question of law under Rule 37 of the Tennessee Rules of Criminal Procedure [are] 'explicit and unambiguous.'" State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003) (quoting State v. Irwin, 962 S.W.2d 477, 479 (Tenn.1998); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996)).

We are "not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question is dispositive of the case." State v. Thompson, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003) (citing State v. Oliver, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000)). "Rather, [we] must make an independent determination that the certified question is dispositive." State v. Dailey, 235 S.W.3d 131, 135 (Tenn. 2007) (citing Preston, 759 S.W.2d at 651). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Our review of the record in this case indicates that the Defendant properly reserved the question and that the question is dispositive of the Defendant's case.

### II. Motion to suppress

The Defendant contends that the trial court erred in denying his motion to suppress because Officer Williams did not have reasonable suspicion to stop the car without a warrant when he did not see the men engaging in illegal behavior. The Defendant asserts that his case is similar to State v. Keith A. Otey, No. M2000-01809-CCA-R3-CD, 2002 WL 560960 (Tenn. Crim. App. Apr. 16, 2002), where this court held that an officer did not have reasonable suspicion to stop a defendant who entered the residence of a heroin dealer and "touched hands" with the dealer before leaving the residence. The State responds that the trial court did not err in denying the motion to suppress because Officer Williams's observation of conduct that was "consistent with criminal activity" provided him with reasonable suspicion to make an investigatory stop of the car. The State asserts that the information gathered as a result of the lawful stop provided Officer Williams with probable cause to arrest the Defendant.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Furthermore, an appellate court's review of the trial court's application of law to the facts is conducted under a de novo standard of review. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citations omitted).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. Any warrantless search or seizure is presumed to be unreasonable and requires the State to prove by a "preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). One such exception to the warrant requirement is an investigatory stop. Id. However, an investigatory stop must be based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 20-21 (1968); Binette, 33 S.W.3d at 218.

Our supreme court has stated that "when an officer turns on [his] blue lights" a stop has occurred. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). An investigatory stop of a vehicle must also be based upon a reasonable suspicion. State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002). Reasonable suspicion is determined by an examination of the totality of the circumstances. Binette, 33 S.W.3d at 218. Circumstances relevant to an analysis of reasonable suspicion include "the officer's personal objective observations, information

obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997). "A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." Id.

The Defendant is correct that the facts in Otey are similar to his case; however, we believe the facts in Otey are distinguishable from the present case. In Otey, Officer Joseph Ladnier had been investigating the activities of Andre Green, a known heroin dealer. Otey, 2002 WL 560960, at *1. On December 14, 1998, Officer Ladnier arrested Mr. Green after purchasing a large amount of heroin from him. After arresting Mr. Green, Officer Ladnier obtained a warrant to search Mr. Green's residence. Before Officer Ladnier had executed the search warrant, the defendant came to Mr. Green's residence and went inside, where he engaged in a conversation and "touch[ed] hands" with Sammy Crawford, a man inside Mr. Green's residence who had been observed selling drugs earlier in the day. The defendant stayed at the residence for 20 minutes before returning to his car and leaving. The defendant passed Officer Ladnier as he was driving away from the residence, and Officer Ladnier advised another officer to stop the defendant solely because the defendant had left a residence that was about to be searched pursuant to a warrant. Neither Officer Ladnier nor the officer who stopped the defendant had observed or was aware of the conversation and the limited contact that occurred between the defendant and Mr. Crawford. As a result of the stop, officers discovered that the defendant did not have a license but had 10.1 grams of crack cocaine and $271 in his possession. In reversing the defendant's conviction, this court noted that the officer who arrested the defendant did not observe and was not aware of the interaction between the defendant and Mr. Crawford. This court determined that the sole issue relevant to the motion to suppress concerned whether an officer may perform an investigatory stop of a defendant because the defendant had visited a residence at which a search warrant was soon to be executed. This court concluded that the defendant's "presence at [Mr.] Green's residence, without more, d[id] not establish a reasonable suspicion to justify the stop of the [d]efendant's vehicle." Id. at *5.

Here, the officer observed the unidentified man approach another man that was standing in the driveway of an apartment-style building and engage in a short conversation before touching hands and returning to the car in which the Defendant was waiting. The officer testified that he had engaged in such interactions in that area to obtain drugs in his capacity as an undercover officer and that he had observed similar interactions in that area. The presence of the Defendant in the high-crime area would not have been enough to establish reasonable suspicion to stop the car. See State v. Lawson, 929 S.W.2d 406, 409 (Tenn. Crim. App. 1996) (concluding that an officer did not have reasonable suspicion to stop a car solely because the car was traveling in a high-crime area late at night). However, we "may consider the characteristics of the area" in determining whether the officer had reasonable suspicion to stop the vehicle. Id. at 408 (citing State v. Scarlett, 880 S.W.2d 707,

709 (Tenn. Crim. App. 1993)). Moreover, the officer in this case observed an interaction between two individuals that resembled interactions that he had participated in as an undercover officer. While the interaction may have been consistent with an innocent, friendly conversation, the "question is not whether the activity may be consistent with innocent activity; rather, [the test is] whether there are facts that make the conduct reasonably suspicious of past or future criminal conduct." Scarlett, 880 S.W.2d at 709 (holding that officer had reasonable suspicion to justify an investigatory stop when the defendant was parked in the middle of the street near a school where crimes had occurred in the recent past).

Considering the "rational inferences and deductions" that Officer Williams drew "from the facts and circumstances known to him," we believe that Officer Williams's observations provided him with a reasonable suspicion to stop the car. See Yeargan, 958 S.W.2d at 632. We also believe that Officer Williams had probable cause to arrest the Defendant after learning that the Defendant had swallowed something to prevent his arrest. Accordingly, we conclude that the trial court did not err in denying the Defendant's motion to suppress his statement.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-6-