STATE of Tennessee, Appellee,

v.

**Rickey Dale LAWSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 24, 1996.

No Permission to Appeal Applied for to the Supreme Court.

Dicken E. Kidwell, Murfreesboro, for appellant.

Charles W. Burson, Attorney General and Reporter, Ellen H. Pollack, Assistant Attorney General, Criminal Justice Division, Nashville, William C. Whitesell, Jr., District Attorney General, Murfreesboro, for appellee.

## OPINION

HAYES, Judge.

The appellant, Rickey Dale Lawson, appeals from a judgment of conviction entered by the Circuit Court of Rutherford County. The appellant pled guilty to DUI, third offense, reserving the right to appeal as a certified question of law the trial court's denial of his motion to suppress. See Tenn. R.Crim.P. 37(b)(2).[1] The appellant contends that the police lacked reasonable suspicion, required under the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution, to conduct an investigatory stop of his vehicle.

After a review of the record, we reverse and dismiss the judgment of conviction.

## BACKGROUND

On June 23, 1995, the trial court conducted a suppression hearing in the instant case. At the suppression hearing, Officer Chris Kauffman of the Murfreesboro Police Department testified that, on December 24, 1994, at approximately 1:45 a.m., he observed a silver Mazda, occupied by two males, enter the January Street housing projects. The officer stated that he was not familiar with either the car or the occupants, and "[d]ue to it being a high crime, narcotics area, it seemed a little bit odd to me." The officer proceeded to "the other side of [his] zone near Vaughn Street area and Spring Valley and Rolling Acres area." He remained "on the lookout"

for the silver Mazda. Approximately ten or fifteen minutes later, at the entrance of Spring Valley Apartments on Manor Drive, the officer again observed the vehicle and decided to stop it.[2] This investigatory stop resulted in the appellant's arrest and subsequent conviction for DUI, third offense. At the suppression hearing, the arresting officer summarized the grounds for the stop:

Q. And what were the reasons why you stopped this car?

A. Well, Sir, it had been seen in one narcotics area, and ten or fifteen minutes later it was seen in another, cruising through the area at 2:00 o'clock in the morning on Christmas Eve.

Q. Was the vehicle involved in anything that would be construed as a violation of the traffic laws?

A. No, sir, as far as getting him speeding or anything like that.

Q. As I understand it, your arrest was based on the fact that they were in a high crime area?

A. Yes, sir.

## ANALYSIS

 Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the federal and state constitutions. *State v. Binion,* 900 S.W.2d 702, 705 (Tenn.Crim.App.1994) (citing *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) and *State v. Westbrooks,* 594 S.W.2d 741, 743 (Tenn. 1979)). In *State v. Watkins,* 827 S.W.2d 293, 294 (Tenn.1992), the Supreme Court of Tennessee, applying *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), set forth the appropriate standard for determining the

---

**1.** We note that the order denying the appellant's motion to suppress and any attendant findings by the trial court have not been included in the record. The only reference to the trial court's denial of the appellant's motion is contained in the Supplemental Order preserving the appellant's right to appeal the certified question of law. In any event, we conclude that the record in this case contains no evidence that would support a reasonable suspicion of criminal activity. *See State v. Dick,* 872 S.W.2d 938, 943 (Tenn. Crim.App.), *perm. to appeal denied,* (Tenn.1993),

and *State v. Killebrew,* 760 S.W.2d 228, 233 (Tenn.Crim.App.1988) (the findings of a trial court at the conclusion of a suppression hearing are afforded the weight of a jury verdict; this court will not set aside the judgment of the trial court unless the evidence in the record preponderates against its findings).

**2.** Officer Kauffman testified that the appellant informed him that his mother lived on Manor Drive.

constitutionality of investigatory stops of automobiles:

> A police officer may make an investigatory stop of a motor vehicle when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him.

(Citations omitted). Additionally, in determining the existence of reasonable suspicion in the case of a vehicular stop, a court may consider the characteristics of the area in which the vehicle was stopped by the police, the behavior of the driver, and aspects of the vehicle itself. *State v. Scarlett,* 880 S.W.2d 707, 709 (Tenn.Crim.App.1993).

In the instant case, the police officer's sole justification for stopping the appellant was the appellant's presence in a "high crime area" at 2:00 a.m. At least one court has observed that "an area's propensity toward criminal activity is something that an officer may consider.... The lateness of the hour is another fact that may raise the level of suspicion." *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993). However, the same court acknowledged and the Supreme Court has held that an individual's presence in a high crime area, standing alone, is not a basis for concluding that the individual himself is engaged in criminal conduct. *Id. See also Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). We conclude, moreover, that the lateness of the hour, without more, does not elevate the facts of this case to the level of reasonable suspicion.

In *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), the Supreme Court reaffirmed the principle that "[t]he officer [making a *Terry* stop] ... must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." In accordance with this principle, the court of appeals of this state has observed that, "[e]very vehicle that enters a 'high crime area' is not fair game to inquisitive officers...." *Williams v. State Dept. of Safety,* 854 S.W.2d 102, 106 (Tenn. App.1992), *perm. to appeal denied,* (Tenn. 1993). *See also State v. Massey,* No. 01C01–9406–CR–00218, 1995 WL 518872 (Tenn. Crim.App. at Nashville, September 5, 1995) (this court affirmed the trial court's exclusion of evidence obtained pursuant to an investigatory stop, where the trial court found that the only reason for the stop was the defendant's presence at night in a high crime area).[3] Similarly, in *People v. Bower,* 24 Cal.3d 638, 156 Cal.Rptr. 856, 860, 597 P.2d

---

**3.** We note that our decision in *Scarlett,* 880 S.W.2d at 707, is clearly distinguishable from the instant case. In *Scarlett,* the police officer observed a truck stopped in the middle of the road behind a small church, which was adjacent to a school. *Id.* at 708. It was midnight. *Id.* Additionally, the officer was aware of several recent complaints concerning prowlers and vandalism at the school. *Id.* When the officer drove up behind the truck, the truck began to move away. *Id.* Although the driver of the truck did not speed or drive in a reckless manner, he made several "quick, hard-angled turns." *Id.* The officer pulled the vehicle over. *Id.* This court affirmed the trial court's denial of the motion to suppress. *Id.* at 709.

Although a closer case, we would also distinguish our decision in *State v. Fitzgerald,* No. 85–143–III, 1986 WL 5680 (Tenn.Crim.App. at Nashville), *perm. to appeal denied,* (Tenn.1986).

In *Fitzgerald,* the officer observed the defendant driving at a slow rate of speed at 1:00 a.m. *Id.* The area was not a "high crime area," but the officer was aware of several recent burglaries. *Id.* Moreover the houses were fairly secluded and located some distance away from the road, rendering them particularly vulnerable to burglaries. *Id.* The officer observed the defendant turn into a driveway and proceed toward the house. *Id.* Some moments later, the defendant backed out of the driveway and drove in the opposite direction from which he had come. *Id.* The officer noted that the vehicle bore out-of-county license tags. This court concluded that the officer had conducted a valid *Terry* stop. *Id.*

Unlike the above investigatory stops, the stop in this case rested on nothing more that the incidence of crime in the area and the time of the stop.

115, 119 (1979), the California Supreme Court held:

> [T]he officer's assertion that the location lay in a 'high crime' area does not elevate these facts into a reasonable suspicion of criminality. The 'high crime area' factor is not an 'activity' of an individual. Many citizens of this state are forced to live in areas that have 'high crime' rates or they come to these areas to shop, work, play, transact business, or visit relatives or friends. The spectrum of legitimate human behavior occurs every day in so-called high crime areas. As a result, this court has appraised this factor with caution and has been reluctant to conclude that a location's crime rate transforms otherwise innocent-appearing circumstances into circumstances justifying the seizure of an individual.

As the State notes in its brief, this court did observe in *Scarlett* that "the question is not whether the activity may be consistent with innocent activity, [but] whether there are facts that make the conduct reasonably suspicious of past or future criminal conduct." 880 S.W.2d at 709. However, in this case, the record is devoid of any such facts.

## CONCLUSION

For the reasons stated above, we conclude that the officer's stop constituted an unlawful seizure of the appellant. Accordingly, we reverse and dismiss the appellant's conviction.

SMITH, J., and WILLIAM S. RUSSELL, Special Judge, concur.