# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

**MARCH SESSION, 1997**

**FILED**

September 3, 1997

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9605-CC-00228** |
| | ) | |
| Appellee, | ) | |
| | ) | **RUTHERFORD COUNTY** |
| | ) | |
| **V.** | ) | **HON. JAMES K. CLAYTON, JR.,** |
| | ) | **JUDGE** |
| **JOHN HOWARD POPE,** | ) | |
| | ) | |
| Appellant. | ) | **(DUI)** |


FOR THE APPELLANT:

**TERRY A. FANN**
WALDRON AND FANN
202 West Main Street
Murfreesboro, TN  37130

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**LISA A. NAYLOR**
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN  37243

**WILLIAM WHITESELL**
District Attorney General

**DALE ROBERTSON**
Assistant District Attorney General

**JOHN PRICE**
Assistant District Attorney General
303 Rutherford County Judicial Bldg.
Murfreesboro, TN  37130


OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, John Howard Pope, was convicted of DUI, 1st Offense, following a bench trial in the Circuit Court of Rutherford County. He appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. In addition to challenging the sufficiency of the evidence to support the conviction, Defendant argues that the trial court erred by denying his Motion to Suppress all evidence obtained as a result of the investigatory stop of him immediately preceding his arrest for DUI. We affirm the judgment of the trial court.

## I. SUPPRESSION OF EVIDENCE

On the night of December 26, 1994, Officer Chris Thornton of the Murfreesboro Police Department was on duty and "sitting stationary" in her patrol car at a car wash. While there, an unidentified young lady approached and stated that she had just been sexually propositioned by a man at the K-Mart parking lot in Murfreesboro. Specifically, the lady told Officer Thornton that the man had offered her "$100.00 for 30 minutes." The lady gave Officer Thornton a description of the man and the van that he was driving, including the color and license plate number. She also related to Officer Thornton that she became scared when the man attempted to follow her to her vehicle. The K-Mart store was not within Officer Thornton's zone for patrol, and she radioed the dispatcher, relayed the information given to her, and requested a unit to investigate. The radio transmission by Officer Thornton could be heard by other officers. No

patrol car was available for the zone in which the K-Mart is located, and the dispatcher requested Officer Thornton to proceed to the scene. In her haste to leave, Officer Thornton did not obtain any identifying information of the woman who made the report, and her identity remained unknown through the time of the hearing of the motion to suppress and the trial.

Officer Charles Goodloe of the Murfreesboro Police Department was on duty at the time, driving a police motorcycle. He was located in front of K-Mart when he heard Officer Thornton's radio transmission and went into the parking lot and observed the described van parked in a parking place. Officer Goodloe stopped his motorcycle behind the van and turned on his blue lights "for the purpose of going up there and talking to him [Defendant]." Officer Goodloe walked up to the driver's side window of the van, which was down, and spoke to Defendant. Defendant did not speak to the officer, but started the van and began to drive off. Goodloe then returned to his motorcycle, with the blue lights still on, and followed the van in an attempt to make the Defendant stop. The Defendant did not stop until after Officer Thornton arrived at the parking lot and drove her vehicle in front of Defendant's van.

When Officer Thornton went up to the van she could smell the odor of an intoxicant on the Defendant. Both officers testified that they never observed the Defendant driving in an erratic manner. He drove about halfway across the parking lot before coming to a stop after leaving Officer Goodloe.

Both officers also confirmed that they had no evidence or facts whatsoever to suspect Defendant was under the influence of any intoxicants until

after he was stopped subsequent to driving away from Office Goodloe. Both officers confirmed that they were relying solely on the unidentified woman's information provided to Officer Thornton in making the stop.

Defendant was placed under arrest for DUI as a result of the observations by the officers of Defendant's intoxication. His vehicle was searched incident to the arrest and the police found a half-empty bottle of vodka, and an opened bottle of orange juice. The Defendant agreed to submit to a blood alcohol test and was taken to the hospital to give a sample of his blood. The sample was sent to the TBI Crime Laboratory and the result was 0.17.

The Defendant testified and denied speaking to any female at the parking lot on the night in question, denied having $100.00 in his possession, and denied making any sexual advance or sexual proposition to any female on the K-Mart parking lot on the night of his arrest. In addition, the Defendant testified that he did not remember Officer Goodloe coming up to his vehicle's window, and that he did stop in the parking lot after he saw Officer Thornton's patrol car.

The proper standard of review for suppression issues was recently set forth by our supreme court in State v. Odom, 928 S.W.2d 18 (Tenn. 1996):

> The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

<u>Odom</u>, 923 S.W.2d at 23.

The Defendant states in his brief that the issue on the Motion to Suppress is "whether there was a sufficient factual basis for the investigatory stop which eventually led to [Defendant] arrest." In support of his argument, Defendant relies upon <u>State v. Binion</u>, 900 S.W.2d 702 (Tenn. Crim. App. 1994), <u>State v. Coleman</u>, 791 S.W.2d 504 (Tenn. Crim. App. 1989), <u>State v. Lawson</u>, 929 S.W.2d 406 (Tenn. Crim. App. 1996), and <u>State v. James Chester Cobb, Sr.</u>, No. 01C01-9011-CC-00308, Hickman County (Tenn. Crim. App., Nashville, filed May 7, 1991). We feel that the facts of the case <u>sub judice</u> are distinguishable from this court's decisions in the cases relied upon by Defendant.

In <u>Binion</u>, the issue presented for review was whether the act of the Defendant lawfully turning his vehicle around approximately 1,000 feet from a police roadblock was sufficient to give a state trooper reasonable suspicion to stop the vehicle. This court held that it did not. <u>Coleman</u> involved a situation where the police officer received a "tip" from an informant whom he did not know prior to receiving the information. In the case <u>sub judice</u>, while the identity of the woman who reported the information to Officer Thornton remains unknown, the woman was a victim citizen informant which satisfied the "basis of knowledge" test lacking in <u>Coleman</u>. <u>See</u> <u>State v. Jacumin</u>, 778 S.W.2d 430 (Tenn. 1989). In addition, information regarding the description of Defendant's van, along with the license plate number and its location was immediately verifiable by Officer Goodloe. Likewise, in <u>Cobb</u>, an unpublished opinion of this court, there was involved an apparently anonymous informant. There was nothing in the record to indicate the "basis of knowledge" of the informant. In <u>Lawson</u>, the stop was

-5-

based solely upon the fact that the Defendant's vehicle was located in a "high-crime area."

While not relied upon by the State in its brief, the case of <u>State v. Pully</u>, 863 S.W.2d 29 (Tenn. 1993), controls in this issue raised by Defendant.

Under <u>Pully</u>, as soon as Officer Goodloe turned on the blue lights of his motorcycle, Defendant was "seized" within the meaning of <u>Terry v. Ohio</u>, 392 U.S.1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). <u>Pully</u>, 863 S.W.2d at 30. However, the next issue to determine is whether the stop and seizure complied with both state and federal constitutional provisions which prohibit "unreasonable searches and seizures." <u>Pully</u>, 863 S.W.2d at 30. According to our supreme court in <u>Pully</u>:

> In general, although the Fourth Amendment requires "probable cause" before an arrest is deemed to be reasonable, the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy.

<u>Pully</u>, 863 S.W.2d at 30.

When Officer Goodloe made his "stop" of Defendant, the Defendant was parked in a marked parking place in a public parking lot. Information received by Officer Goodloe from Officer Thornton's radio transmission was that the victim of a reported crime had generally described the alleged perpetrator, the perpetrator's vehicle, including its license tag number and color, and its location. The descriptive information was immediately verified by Officer Goodloe.

-6-

In this case, the public interest served by the "stop" of Defendant was the investigation and prevention of the crime of soliciting prostitution in a public parking lot of a department store. The stop was made of an individual located in his vehicle in a marked parking place of the parking lot. The intrusion was relatively minor considering all of the facts and circumstances. The basis of knowledge of the "informant" was from the standpoint of a victim eye-witness to an alleged crime recently committed and descriptive information given by the person providing the information was immediately verified. We conclude that the police officers had "specific and articulable facts" to justify the investigatory stop in this case. This issue is without merit.

## II. SUFFICIENCY OF THE EVIDENCE

The Defendant's second issue is whether the trial court erred in convicting the Defendant of driving under the influence, first offense, based upon the evidence as presented at trial. The Defendant first argues that the blood test should not have been admitted at trial as fruit of the poisonous tree stemming from the illegal investigatory stop. We have already held that the stop was not improper. Therefore, the blood test was properly admitted.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised

by the evidence, are resolved by the trier of fact, not this court. <u>State v. Pappas</u>, 754 S.W.2d 620, 623 (Tenn. Crim. App.), <u>perm</u>. <u>to appeal denied</u>, <u>id</u>. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. <u>Cabbage</u>, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982); <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973).

Officer Thornton first testified to the events leading up to the encounter with the Defendant in the K-Mart parking lot. Once the Defendant was stopped, Officer Thornton saw that the Defendant was red-faced and sleepy-eyed. When the Defendant got out of the van he stumbled, and the Officer had to hold his arm. She smelled the odor of an intoxicant. The Defendant's eyes were red and his speech was slurred. In the Defendant's van she found a partially empty bottle of Smirnoff Vodka and a cold, small orange juice bottle. The officer did not ask the Defendant to perform any field sobriety tests because she was worried that he would fall down in the parking lot and hurt himself. She arrested him and asked him to submit to a Blood Alcohol Test. The report came back that the Defendant's blood alcohol level was 0.17 percent.

Officer Goodloe testified to events up to the point of the arrest. He then stated that when he began speaking with the Defendant he could smell the odor of an alcoholic beverage coming from the Defendant. The Defendant was unsteady on his feet and unable to stand without wobbling. He confirmed no field sobriety tests were given because of concerns that Defendant might hurt himself. Based on the appearance, smell, and speech of the Defendant, Officer Goodloe believed him to be under the influence of an intoxicant.

Tennessee Code Annotated section 55-10-401 reads, "[i]t is unlawful for any person . . . to drive or to be in physical control of any automobile . . . while on the premises of any shopping center . . . while under the influence of any intoxicant . . . ." From the testimony and exhibits at the bench trial, the Defendant was clearly driving and in physical control of the van, clearly on the premises of a shopping center and clearly under the influence of alcohol. There is no question that a reasonable trier of fact could find the Defendant guilty of driving under the influence.

This issue is without merit. We affirm the judgment of the trial court.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge

_____

JOE G. RILEY, Judge