IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 6, 2006 Session

## STATE OF TENNESSEE v. WILLIAM LARRY LITTLES

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5055     Joseph H. Walker, III, Judge**

_____

**No. W2005-02686-CCA-R3-CD  - Filed September 7, 2006**

_____

This is a direct appeal from a conviction on a jury verdict of driving under the influence of an intoxicant (DUI), fourth or subsequent offense. The Defendant, William Larry Littles, filed a motion to suppress evidence obtained as a result of a warrantless seizure, alleging the police did not have reasonable suspicion to conduct the investigatory stop that led to the seizure. The Defendant's motion to suppress was denied. Following his conviction he was sentenced to eighteen months in the custody of the Tennessee Department of Correction (TDOC). This sentence was suspended, and he was ordered to serve 180 days in jail followed by supervised probation. On appeal, the Defendant raises a single issue: that the trial court erred in denying his motion to suppress. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. GARY R. WADE, P.J., not participating.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, William Larry Littles.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; and Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The conviction at issue stems from an incident originating on Highway 51 North in Tipton County between Millington and Atoka. The record reveals that shortly after 9:00 p.m. on the evening of March 1, 2004, Ms. Linda Sunderland was driving home when she was nearly run off the

road by the Defendant as he passed her vehicle. After observing the Dependant's "erratic" driving, Ms. Sunderland called 911 on her cell phone to report the incident, and shortly thereafter she observed an officer with the Atoka Police Department follow the Defendant into a convenience store parking lot. The Defendant was confronted and subsequently arrested for driving under the influence.

In March of 2005, a Tipton County grand jury indicted the Defendant on three charges: (1) driving under the influence of an intoxicant, see Tenn. Code Ann. § 55-10-401; (2) driving under the influence with prior DUI convictions, see id. § 55-10-403; and (3) violating the implied consent law, see id. § 55-10-406. The Defendant filed a motion to suppress the evidence gathered from his seizure, arguing the police lacked probable cause for his arrest. In July of 2005, an evidentiary hearing was conducted pursuant to the Defendant's motion to suppress.

At this evidentiary hearing, Ms. Sunderland testified that on the date of the incident, she was driving home from a church meeting in Millington, traveling north on Highway 51 through Tipton County, when "a car went past me, ran my tires off the road." Ms. Sunderland stated that the "driving" of the man in the car that passed her was "just erratic. It was just back and forth, weaving. He almost ran off the road himself a couple of times." Ms. Sunderland explained that when she tried to pass this driver on the left, he swerved into her lane and almost hit her again.

Because she believed the driver of this vehicle to be a danger to himself and others on the road, Ms. Sunderland called 911 from her cell phone to report the incident. The 911 dispatcher forwarded the information to the police. A police officer called Ms. Sunderland back on her cell phone and instructed her to continue to follow the vehicle and a police officer would intercept them where Kimbrough Road crossed Highway 51 near Crosstown. In accordance with the prearranged instructions, Ms. Sunderland flashed her headlights off and on as she approached Kimbrough Road and a police officer pulled out between her and the Defendant's vehicle. The police representative on the phone instructed Ms. Sunderland to follow the police cruiser into the parking lot of a convenience store, which she did. She observed the driver pull into the parking lot of the convenience store, the police car follow, and the driver exit the vehicle and "quickly" enter the store.

On cross-examination, Ms. Sunderland admitted she could not identify the Defendant as the driver of the vehicle that night nor could she describe the vehicle, but she stated: "I followed the car, I never left sight of the car. So whoever got out of that car, that's the person that [the police] were after." Ms. Sunderland further stated that while she could not remember the specifics of the car at the hearing, she "probably described it to the officer at the time."

Lieutenant Mike Durham of the Atoka Police Department testified that while he never spoke directly with Ms. Sunderland that night, he received a call from dispatch and agreed that he would intercept a vehicle suspected of erratic driving at the intersection of Highway 51 and Kimbrough Road. He was told that he would know it was the suspect vehicle because it was being followed by a citizen who would flash her headlights. Officer Durham found the vehicle in question and followed it for approximately a quarter mile before it "made a quick right turn" into a convenience

store parking lot. During the short time he followed the vehicle, Officer Durham observed that the driver of the vehicle "jerked the steering wheel over to off [sic] the white line, the fog line" two times. According to Officer Durham, there was "not a lot of traffic at the time." Officer Durham followed the Defendant into the parking lot, where the Defendant parked by the front door. Officer Durham first activated his blue lights after the Defendant had parked but before the Defendant exited his vehicle.

Officer Durham explained that the Defendant exited his vehicle and "real quick . . . went toward the door and went in the store." Officer Durham followed the Defendant into the store, asked him to step outside, and once outside, the two talked for a few minutes. Officer Durham stated that when he first made contact with the Defendant in the store, he "noticed" a "strong intoxicating odor" about the Defendant and that the Defendant's "speech was slurred." Once outside the store, Officer Durham observed the Defendant more closely and determined that the Defendant was "more intoxicated than [he] thought he was in the store." The Defendant stood as if he was trying to brace himself and "staggered" when he walked. Officer Durham asked the Defendant to perform three separate field sobriety tests, but the Defendant declined to perform all three. The Defendant was then informed of his rights pursuant to the implied consent law but refused to sign the implied consent form. When asked if he had been drinking, the Defendant replied in the affirmative.

At the conclusion of the hearing, the trial court denied the Defendant's motion to suppress, noting that the police had reasonable suspicion to conduct an investigatory stop of the Defendant due in large part to the information provided by Ms. Sunderland. In its order, the trial court found the warrantless seizure was acceptable pursuant to the "concerned citizen on a cell phone exception."

In August of 2005, the Defendant received a jury trial, during which evidence was introduced that was consistent with that presented at the hearing on the motion to suppress. At the conclusion of the trial, the jury first found the Defendant guilty of DUI, and in a separate proceeding, found him guilty of a fourth or subsequent offense of DUI. The Defendant was subsequently sentenced to eighteen months in the custody of the TDOC, suspended, and placed on probation after service of 180 days in jail. The Defendant was also assessed a fine of $15,000 by the jury, which was reduced to $3,000 by the trial court, and his driver's licence was suspended. The judgment of conviction reflects that the violation of the implied consent law included in the Defendant's indictment was "not charged as a criminal offense." The Defendant timely filed a motion for a new trial in August of 2005, which was denied. This appeal followed.

**ANALYSIS**

On appeal, the Defendant asserts that the trial court erred in denying his motion to suppress evidence discovered as a result of the investigatory stop and seizure. To support this claim, the Defendant argues that "from the standpoint of the officer," the only basis on which to conduct the investigatory stop and seizure was witnessing the Defendant cross the fog line two times, hurriedly walking into a store, and the "hearsay" information supplied by a citizen on a cell phone. Thus, the Defendant asserts, the police lacked "reasonable suspicion" to believe that an offense was being committed and therefore violated the Defendant's constitutional rights to be free from warrantless

searches and seizures. As such, the Defendant further argues that the evidence obtained from his seizure should have been suppressed and the case against him dismissed. We disagree.

## I. Standard of Review

When reviewing the correctness of a trial court's grant or denial of a pretrial motion to suppress, an appellate court must uphold the trial court's findings of fact "unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). This standard recognizes that the credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters "entrusted to the trial judge as the trier of fact." Id. Moreover, it is settled law that the party prevailing at the trial court is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence, see State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001), and the defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court, see Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

However, this Court is not bound by the trial court's conclusions of law. See State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts as found by the trial court is a question of law which an appellate court reviews de novo. See State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Because the facts presented at the suppression hearing in this case were undisputed, only questions of law are before this Court. Therefore, our review of the record before us is purely de novo. See State v. Gonzalez, 52 S.W.3d 90, 94 (Tenn. Crim. App. 2000).

## II. Constitutional Protections from Unlawful Searches and Seizures
### A. General Rule

Both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution prohibit "unreasonable searches and seizures."[1] The intent and purpose behind these constitutionally protected rights is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court of San Francisco,

---

[1]The Fourth Amendment to the United States Constitution provides as follows:

> Unreasonable searches and seizures. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, section 7 of the Tennessee Constitution guarantees that:

> the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

387 U.S. 523, 528 (1967).[2]  As a general rule, warrantless searches or seizures are presumed unreasonable, and any evidence discovered thereby is subject to suppression unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to a narrowly defined exception to the warrant requirement.  See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Garcia, 123 S.W.3d 335, 343 (Tenn. 2003).

B.  Seizure

Before the constitutional protections against an unreasonable seizure are triggered, there must be a seizure.[3]  Our courts have recognized three types of police-citizen interactions: (1) a full scale stop and arrest, which must be supported by probable cause, see Whren v. United States, 517 U.S. 806, 809-10 (1996); (2) a brief investigatory stop, which must be based on reasonable suspicion supported by specific and articulable facts, see Terry v. Ohio, 392 U.S. 1, 20-23 (1968); and (3) a brief police-citizen encounter, which requires no objective justification, see United States v. Drayton, 536 U.S. 194, 201-02 (2002).  See also Daniel, 12 S.W.3d at 424.  Of the three categories, only the first two raise to the level of a "seizure" for constitutional analysis purposes.

An encounter between a government official and a citizen is a seizure "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" Terry, 392 U.S. at 20 n.16.  In determining whether an encounter between a citizen and the police is a consensual encounter or a seizure, courts are instructed to look to the surrounding circumstances and "determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991).  See also Gonzalez, 52 S.W.3d 52 at 96.

Both the United States Supreme Court and our state supreme court have held that a stop of an automobile and the detention of its occupants constitutes a seizure even if the purpose of the stop is limited and the detention is brief.  See Whren, 517 U.S. at 809-10; State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997).  In the case at hand, the trial court noted in its order denying the Defendant's motion to suppress that the "officer did not initiate a 'stop' of the defendant's vehicle.  . . . The defendant's vehicle was stopped before the officer activated his lights."  Nonetheless, it is established law in Tennessee that "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop[,] "and the vehicle's driver is" 'seized' within the meaning of the Terry decision." State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993).  Therefore, the Defendant was "seized"as he sat in his parked vehicle in the lot of the convenience store when the officer activated his blue lights, and the primary issue before this Court is whether or not this warrantless seizure was constitutionally "unreasonable."

_____

[2]The intent and purpose of the prohibitions against unreasonable searches and seizures found in the Tennessee Constitution have been found to be the same as that behind the provision found in the Fourth Amendment to the United States Constitution.  See State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998).

[3]The Defendant has not alleged an unlawful search.  On appeal, the Defendant argues only that he was subjected to an unlawful seizure when the police "stopped his vehicle," and that the evidence obtained subsequent to this seizure was tainted and should be suppressed.

### III. Investigatory Stop

In the case at hand, the Defendant was seized without a warrant. While a warrant is normally required when a government official intrudes upon the privacy of a citizen, there are several narrowly defined exceptions to this warrant requirement. One such recognized exception exists when the police make a brief investigatory stop. See Terry, 392 U.S. at 21; Garcia, 123 S.W.3d at 343. In order for such a warrantless seizure to be deemed reasonable, the Unites States Supreme Court has held that the detention must have been based on "reasonable" suspicion, supported by "specific and articulable facts" that a criminal offense has been committed or is about to be committed. Terry, 392 U.S. at 20-21.

The language of the Defendant's claim on appeal clearly indicates that he considers the first interaction between himself and the police the night of his arrest to have been an "investigatory stop," but he argues such a stop was unjustified as it was not adequately supported by "reasonable suspicion."[4] The Defendant argues that (1) the minor violations of crossing the fog line in the absence of traffic, (2) the fact hat he "quickly" entered the convienience store, and (3) the informant's "hearsay" tips, were all inadequate to support a reasonable suspicion that he committed a crime, and therefore, the investigatory stop was an unreasonable seizure. The State argues that the police did have reasonable suspicion under the circumstances in this case to initiate an investigatory stop based upon reliable testimony from a citizen-informant and other objective factors. We agree with the State.

#### A. Reasonable Suspicion Analysis

Determining whether or not reasonable suspicion existed in a particular stop "is a fact-intensive and objective analysis." Garcia, 123 S.W.3d. at 344. The likelihood of criminal activity required for reasonable suspicion is clearly not as great as that required for probable cause and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. United States v. Soklow, 490 U.S. 1, 7 (1989). See also State v. Keith, 978 S.W.2d 861, 866 (Tenn. 1998).

When evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court "must consider the totality of the circumstances." State v. Hord, 106 S.W.3d 68, 71 (Tenn. Crim. App. 2002). This inquiry looks to such factors as the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. See Pulley, 863 S.W.2d at 30-31. The objective facts on which an officer relies can include, but is not limited to, his or her own observations, information obtained from other officers or agencies, offenders' patterns of operation, and--most crucial in this case--information from informants. See State v Lawson, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996).

---

[4]The Defendant has not alleged on appeal that the police lacked the higher standard of "probable cause" to stop and arrest him, as was alleged in his original motion to suppress. Furthermore, the Defendant has not alleged that upon conclusion of the investigatory stop, the police lacked "probable cause" to arrest him for the offense of DUI.

B. Informant Information

It is well established that the facts forming the basis of an officer's reasonable suspicion need not rest upon the personal knowledge or observations of the officer. See Keith, 978 S.W.2d at 865 (citing Adams v. Williams, 407 U.S. 143, 147 (1972)). However, when a seizure is based on the tip of an informant, the danger of a false report is a recognized concern. See, e.g, Gonzalez, 52 S.W.3d at 99. Because of this potential danger, the veracity of the informant upon whose statement a seizure is initiated is subject to scrutiny. In conducting this analysis, Tennessee courts have distinguished anonymous or confidential informants from citizen informants.

Our supreme court has held that when considering whether or not information obtained from an anonymous informant adequately supports an officer's reasonable suspicion, "some showing of both the informant's veracity or credibility and his or her basis for knowledge" is required. Keith, 978 S.W.2d at 866 (citing State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989)). However, a different standard is applied to a "citizen informant." Information from a citizen informant is presumed reliable and not subjected to the same level of scrutiny as that of an anonymous informant. See State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). Thus, information obtained from a citizen informant is not subject to the two-prong reliability test. Citizen informant information is presumed reliable because the informant has necessarily gained their information through first-hand experience, and their motivation for communicating with the authorities is based on the "interest of society or personal safety." State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998).

In the case at hand, a concerned citizen dialed 911 to report the Defendant after he was witnessed driving erratically and in a manner that the citizen believed posed a danger for the Defendant and others traveling the public roads of Tennessee. The citizen-informant followed the Defendant and maintained contact with either the 911 dispatcher or law enforcement, providing the proper authorities with a description of the Defendant's vehicle and its location. This citizen-informant was present when the police intercepted the Defendant, and she was also present when the police effected the investigatory stop and ultimate arrest of the Defendant. The citizen-informant also gave a formal statement to the police.

The record reveals that the citizen-informant in this case gained her information through first-hand observation and her motivation for communicating with the authorities is based in the "interest of society or personal safety." Luke, 995 S.W.2d at 636. Accordingly, the citizen-informant provided reliable, specific and articulate facts from which the police officer could form a reasonable suspicion that the Defendant was driving under the influence. See State v. Fred Taylor Smith, No. W2002-02199-CCA-R3-CD, 2003 WL 22309485, at *3 (Tenn. Crim. App., Jackson, Oct. 8, 2003) (upholding an investigatory stop where "a citizen who had seen the defendant at close range and who had observed his driving on a public road, reported his suspicion that the defendant was driving under the influence to the police").

C. Totality of the Circumstances.

The Defendant also claims that neither the minor infraction of driving across the fog line when there was no danger to other traffic, citing State v. Smith, 21 S.W.3d 251 (Tenn. Crim. App.

1999), nor his "flight" into the store, citing Grey v. State, 542 S.W.2d 102 (Tenn. Crim. App. 1976), constituted specific and articulable facts that would support a reasonable suspicion that an offense had occurred or was about to occur. However, as stated above, when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court "must consider the totality of the circumstances." Hord, 106 S.W.3d at 71. In this case, the police officer observed the Defendant cross the white fog line twice in only a quarter of a mile. This observation corroborated the citizen-informant's eye-witness reports of extensive and dangerous erratic driving. Officer Durham testified at trial that after activating his blue lights, the Defendant "looked back at me and kept walking on into the store."[5] Because the Defendant's "flight" occurred after the officer activated the blue lights, we will not consider this fact in determining whether there was sufficient reasonable suspicion to justify an investigatory stop.

Based on the totality of the circumstances, we find the police officer had ample specific and articulable facts upon which to base a reasonable suspicion that the Defendant was involved in criminal activity, specifically driving while under the influence of an intoxicant. The citizen-informant's initial 911 call and subsequent reports to law enforcement are presumed reliable. See Melson, 638 S.W.2d at 354. Additionally, the fact that the citizen-informant maintained contact with law enforcement throughout the entire incident and was present when the Defendant was confronted by the police weigh heavily in favor of further accrediting her reports of the Defendant's criminal activity. The arresting police officer's own observations of the Defendant's erratic driving further bolstered the specific and articulable facts upon which the officer could base a reasonable suspicion sufficient to conduct an investigatory stop. Accordingly, the Defendant's seizure pursuant to an investigatory stop was not unlawful within the purview of the Tennessee and United States Constitutional protections against unreasonable searches and seizures, and the evidence resulting from this seizure was properly admitted at trial. This issue is without merit.

## CONCLUSION

Based on the forgoing reasoning and authorities, we conclude that the trial court properly denied the Defendant's motion to suppress evidence discovered as a result of the investigatory seizure. The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

---

[5]Both the evidence presented at the suppression hearing and the proof adduced at trial may be considered in reviewing a trial court's ruling on a motion to suppress. See State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).