# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## March 23, 2010, Session

## STATE OF TENNESSEE v. GARY LEE HUNT

### Direct Appeal from the Criminal Court for Davidson County
### No. 2008-A-465    Mark J. Fishburn, Judge

---

### No. M2009-01169-CCA-R3-CD - Filed July 30, 2010

---

The Defendant, Gary Lee Hunt, pled guilty to driving under the influence ("DUI"), second offense, and the trial court sentenced him to eleven months and twenty-nine days, forty-five days of which he was ordered to serve in incarceration with the remainder to be served on probation. In accordance with Tennessee Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the stop of his vehicle, which led to his indictment and guilty plea, was constitutional. After a thorough review of the record and applicable authorities, we conclude that the stop of the Defendant's vehicle was constitutional. Therefore, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, and THOMAS T. WOODALL, JJ., joined.

Bob Lynch, Jr., Nashville, Tennessee, for the Appellant, Gary Lee Hunt.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; David Vorhaus, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from police stopping the Defendant's vehicle in Davidson County, which led to the Defendant being charged with DUI, second offense. Though he ultimately pled guilty, the Defendant filed a motion to suppress the evidence seized as a result of the

stop of his vehicle, and the trial court held a suppression hearing. At this hearing, Corporal Daniel Okert, the Goodlettsville Police Department officer who stopped the Defendant's vehicle, testified about what he observed that led him to stop the Defendant.

Corporal Okert testified that at 1:00 a.m. on January 18, 2007, as he was traveling northbound on Interstate 65 approaching the Old Hickory Boulevard exit within Davidson County, he noticed two vehicles traveling "bumper-to-bumper" in the left-hand lane. His attention quickly focused on the car in the lead, the Defendant's vehicle, because it was "having difficulty staying in [its] lane of traffic" and weaving out of its lane of traffic "a number of different times." The officer followed the two cars as they passed into the city limits of Goodlettsville but still within Davidson County. At this point, the Defendant moved into the right lane and continued to have difficulty maintaining his lane of traffic. They soon approached the ramp for the Vietnam Veterans Parkway Exit, and the Defendant began to take this exit. Corporal Okert explained that this ramp is divided from the interstate by a gourd, which is a white median stripe, and that, as the Defendant exited the interstate, he traveled through this gourd. The corporal followed the Defendant onto the ramp, and when they reached a suitable area, he stopped the Defendant for failure to maintain his lane of traffic.

On cross-examination, Corporal Okert said he was on duty, returning from having either booked a prisoner or delivered citations in Metro Nashville, when he noticed the Defendant's vehicle. He explained that his patrol car was not equipped with a camera at the time but had since been equipped with one. The corporal testified that the Defendant was traveling either at or below the speed limit in the center lane of I-65 when he noticed the Defendant. He said traffic was light, so he easily noticed the second vehicle was traveling "on [the Defendant's] bumper basically following him too closely."

Corporal Okert said he had been following the Defendant's vehicle for about two and half miles before the Vietnam Veteran's Parkway Exit, and that he stopped the Defendant approximately one and a half miles after they took this exit. He explained it was the left side of the Defendant's vehicle that crossed through the "gore" area dividing the exit ramp from the interstate. He also explained that the gourd area was a paved, v-shape area that widened as the exit continued. The corporal said that as much as half of the Defendant's vehicle traveled into the gourd. Corporal Okert said that the second vehicle followed the Defendant onto the exit but that no other vehicles were nearby. The corporal testified that he stopped the Defendant because he understood the law to prohibit a driver from weaving in and out of the driver's lane on a controlled access interstate highway, such as I-65. He testified that nothing in the way the Defendant operated his vehicle suggested the Defendant was intoxicated. Corporal Okert cited the Defendant only for DUI and not for any traffic violation.

2

On redirect examination, the corporal explained that he did not cite the Defendant for a traffic violation because it was "common courtesy" in his line of work to not cite an offender for a moving violation when he is subsequently arrested for a DUI. The corporal said this is so because moving violations are perceived to be elements of an offender's impaired state.

At the end of the suppression hearing, the trial court took the matter under advisement and later issued a written order denying the Defendant's motion to suppress. The Defendant now appeals this judgment.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his motion to suppress the evidence resulting from his traffic stop. Specifically, he asserts Corporal Okert lacked reasonable suspicion to stop his vehicle, and, as such, the evidence gathered after the stop is inadmissible.

### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. An appeal lies from any judgment of conviction upon a plea of guilty if the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved with the consent of the State and the court the right to appeal a certified question of law that is dispositive of the case. Tenn. R. Crim. Proc. 37(b)(2); *see State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). Further, the following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

> (iv) The judgment or document reflects that the defendant, the state, and

3

the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

The record shows that these requirements have been met. Attached to the judgment of conviction is a signed order containing a statement of the certified question and a statement that the parties agree the question is dispositive:

> The Defendant entered into a plea agreement under Rule 11 (a)(3) of the Tennessee Rules of Criminal Procedure which explicitly reserved–with the consent of the state and of the court–the right to appeal the court's denial of his motion to suppress filed on July 9, 2008, which said motion asserted that Officer Okert lacked probable cause or reasonable suspicion to stop and detain Defendant. Further, . . . the Defendant, the state, and the trial court are of the opinion that the certified question, *i.e.* the denial of the motion to suppress is dispositive of the case.

The statement clearly identifies the certified question in both scope and legal limits, and it verifies that the trial court and the State both expressly consented to the reservation of the certified question. Also, the statement indicates that the trial court, the State, and the Defendant were of the opinion that the certified question was dispositive in the Defendant's case, and we agree. In this case, if Officer Okert did not have reasonable suspicion to stop the Defendant's vehicle, then all evidence seized after the stop of his vehicle would be excluded. *State v. Troxell*, 78 S.W.3d 866, 870-71 (Tenn. 2002). As such, this issue is dispositive on appeal, and we will address it.

### B. Motion to Suppress

The Defendant contends Corporal Okert lacked reasonable suspicion to stop his vehicle, and, as such, the evidence gathered after the stop is inadmissible. He first draws attention to Officer Okert's failure at the suppression hearing to directly quote the traffic law he observed the Defendant violate, Tennessee Code Annotated § 55-8-123(a) (2006), which the Defendant contends requires an officer to assess whether a driver unreasonably veered outside his lane. The Defendant acknowledges that, generally, an officer's subjective intent does not affect the reasonableness of an investigatory stop. He argues, however, that the subjective element of this traffic law requires an officer to actually possess the subjective belief that the driver was unreasonably changing lanes in order to make an investigatory stop. The Defendant contends that Officer Okert's ignorance of the traffic law's specific language demonstrates his incapacity to have possessed this subjective belief and that he, thus, could

4

not have possessed a reasonable suspicion that the Defendant violated the traffic law. The State responds that, regardless of Officer Okert's understanding of the law, the Defendant's weaving in and out of his lane and crossing through the "gore" would have given anyone probable cause to believe the Defendant was violating Tennessee Code Annotated § 55-8-123(a).

In his reply brief, the Defendant incorrectly states that the parties agree that nothing about the way the Defendant maneuvered his vehicle indicated he was driving while intoxicated. In fact, the State argues in its brief that the Defendant's weaving in and out of his lane gave Officer Okert reasonable suspicion to believe the Defendant was under the influence. Thus, the State continues, the Defendant's navigation of his vehicle provided ample support for an investigatory stop.

The standard of review for a trial court's suppression hearing mandates that its findings of fact "will be upheld unless the evidence preponderates otherwise." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *accord State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution and conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id*. However, this court reviews a trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 22-23; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the United States and Tennessee Constitution protect against unreasonable searches and seizures. The Fourth Amendment of the U.S. Constitution proclaims that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Article 1, Section 7 of the Tennessee Constitution provides "people shall be secure in their persons, houses, and papers and possessions, from unreasonable searches and seizures." Tenn. Const. art. I, § 7. Generally, to search a person's property, a warrant is needed. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). Evidence seized as a result of a warrantless search of a person's property, therefore, "is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Id*. A trial court accordingly presumes that a warrantless search or seizure is unreasonable unless the State demonstrates that one of the exceptions to the warrant requirement applies to the search. *Id*.

One exception to the warrant requirement is when an officer has reasonable suspicion to believe some criminal action involving a vehicle has occurred. *Terry v. Ohio*, 392 U.S. 1 (1968). An officer may make a brief investigatory stop if the officer has a reasonable suspicion based upon specific and articulable facts that a criminal offense has been, is being, or is about to be committed. *Id*. Whether reasonable suspicion exists is determined by examining the totality of the circumstances surrounding the stop. *State v. Smith*, 21 S.W.3d 251, 256 (Tenn. Crim. App. 1999). An officer may base his stop on personal observations, information obtained from other officers or agencies, offenders' patterns of operation, and information from informants. *See State v. Lawson*, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996). The rational inferences that a seasoned officer draws from facts and circumstances may also support his reasonable belief. *Smith*, 21 S.W.3d at 256.

In its written order denying the Defendant's motion to suppress, the trial court found that the Defendant weaved in and out of his lane of traffic on the interstate and then drove through the "gore" dividing the interstate from the Vietnam Veterans Parkway exit while other vehicles were nearby. Based on these facts, the trial court found that Corporal Okert had reasonable suspicion to stop the Defendant's vehicle and that suppression of the evidence related to his DUI charge was not warranted. Indeed, our review of the record reveals that Officer Okert testified and the Defendant does not dispute that he failed to maintain his lane of traffic and that he passed through the "gore" while he exited the interstate onto the Vietnam Veterans Parkway. As such, the record does not preponderate against the trial court's factual findings and we will not disturb them on appeal. *Odom*, 928 S.W.2d at 22-23.

Further, we conclude that the manner in which the Defendant maneuvered his vehicle gave the officer specific and articulable facts upon which to base a reasonable suspicion that the Defendant was both driving under the influence and violating Tennessee Code Annotated section 55-8-123(a). First, regarding the degree to which the Defendant would have given an observer reason to believe he was driving under the influence, weaving in and out of one's lane of traffic is a "specific and articulable fact" upon which to base a belief that a driver is intoxicated. *Terry*, 392 U.S. at 1. As such, and because an officer's subjective reason for making an investigatory stop is irrelevant, we conclude that Officer Okert's stop of the Defendant's vehicle was constitutionally sound despite the officer's indication at the suppression hearing that, before he pulled over the Defendant, he observed nothing to indicate the Defendant was intoxicated.

We conclude that the Defendant's behavior also justified an investigatory stop based upon Tennessee Code Annotated section 55-8-123(a). This section requires that a vehicle "shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety." T.C.A. § 55-8-123(a). In our view, the Defendant, who wove in and out of his lane

cannot be said to have driven "as nearly as practicable entirely within a single lane." The same can be said for his driving through the "gore" separating the interstate from the Vietnam Veterans Parkway exit. Also, we fail to discern, and the Defendant fails to offer, any reasonable explanation for why the Defendant believed these maneuvers could "be made with safety." Further, contrary to the Defendant's argument, any defect in Officer Okert's understanding of Tennessee Code Annotated section 55-8-123(a) does not diminish the adequacy of the record to support the investigatory stop. Therefore, we conclude the stop of the Defendant's vehicle was lawful, and the trial court properly denied the Defendant's motion to suppress. The Defendant is not entitled to relief

### III. Conclusion

After a thorough review of the evidence and relevant authorities, we conclude that the stop of the Defendant's vehicle was constitutional. Accordingly, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE